# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10cv209

| | |
|---|---|
| HENRY McKOWEN,  )<br>    Administrator of the Estate  )<br>    of Mary Castle, deceased,  )<br>                    )<br>    Plaintiff,  )<br>                    )<br>vs.  )<br>                    )<br>MICHAEL J. ASTRUE, Commissioner  )<br>of Social Security,  )<br>                    )<br>    Defendant.  ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 13] and the Defendant's Motion for Summary Judgment [Doc. 18].

## I.  PROCEDURAL HISTORY

The Plaintiff's decedent, Mary Ann Castle (hereinafter referred to as "Plaintiff"), filed an application for a period of disability and disability insurance benefits on December 30, 2004, alleging that she became disabled on December 2, 2003. [Transcript ("T.") 82-84]. She subsequently amended her alleged onset date to April 1, 1998. [T. 43, 92]. Her application was denied initially and on reconsideration. [T. 35-37, 39-43]. A hearing was held before

Administrative Law Judge ("ALJ") Ivar Avots on February 20, 2008. [T. 728-69]. On July 15, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 19-25]. The Appeals Council accepted additional evidence, including the fact that Plaintiff was subsequently found to be disabled on a later SSI claim effective December 19, 2008, but denied her request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 7-10]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g). Plaintiff died during the pendency of this proceeding before this Court and her Administrator has been substituted as party plaintiff herein.

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show

any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. THE ALJ'S DECISION

On July 15, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 19-25]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was March 31, 2003 and that she had not engaged in any substantial gainful activity since April 1, 1998, her alleged onset date. [T. 21]. The ALJ then determined that Plaintiff had the following severe impairments: bipolar disorder, major depression, an obsessive-

4

compulsive disorder, a generalized anxiety disorder, and polysubstance dependence. [Id.]. The ALJ concluded, however, that her impairments did not meet or equal a listing. [Id.]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but could only perform simple, routine repetitive tasks. [T. 22-23].

Although the ALJ found that Plaintiff was unable to perform her past relevant work [T. 24], he determined that jobs existed in significant numbers that the Plaintiff could perform [T. 25]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date of April 1, 1998 through March 31, 2003, her date last insured. [T. 25].

## V. DISCUSSION

Plaintiff first contends that the Commissioner's determination that she was disabled as of December 2008 constitutes "new and material evidence" justifying remand for reconsideration of her earlier claim. The Court, however, already has rejected Plaintiff's argument that the Commissioner's subsequent determination constitutes new and material evidence in this case. [Doc. 17]. Thus, Plaintiff's argument for remand on this grounds must be rejected.

Next, Plaintiff contends that the ALJ's decision should be remanded

5

because he "improperly disregarded the clinical assessments of the mental health professionals who have treated this patient continuously for severe mental illness, and failed to consider the longitudinal effect of her nonexertional impairments, dating back many years prior to her date last insured." [Doc. 14 at 9]. In essence, Plaintiff contends that the clinical evidence of record supports a finding of disability for the relevant period between her alleged onset date and her date last insured. [Id.]. In so arguing, however, Plaintiff does not identify any specific legal or factual error in the ALJ's decision.

As the Commissioner acknowledges in his brief [Doc. 19 at 4], there is no doubt that Plaintiff was a deeply troubled individual who suffered from various mental impairments and made numerous suicide attempts before succeeding in taking her own life in December 2010. Yet, as Plaintiff appears to concede in her brief, the record evidence of Plaintiff's treatment prior to her date last insured of March 21, 2003 is very sparse. Almost all of the medical evidence of record relates to treatment received well after her date last insured. The records that are available from the relevant time period were extensively discussed by the ALJ in his decision. [T. 23-24]. Specifically, the ALJ described Plaintiff's treatment with Elisa Feingold, D.O., from September 1998 through December 2002. [T. 23-24 (discussing Exhibit 17F)]. The ALJ

6

addressed Dr. Feingold's initial psychiatric evaluation of Plaintiff in September 1998, during which Plaintiff reported opening a chocolate business with her husband while continuing to run her own transcription business; making friends easily; being active in theater; and taking several classes. [T. 23, 545-49]. On the mental status examination, Dr. Feingold noted that Plaintiff good mood and anxiety control; that her insight and judgment were good; and that she had no thoughts of harming herself or others. [T. 548]. As the ALJ explained, Dr. Feingold's treatment notes reveal that Plaintiff was generally doing well, except for some episodic symptoms and alcohol abuse. [T. 24]. In April 1999, Plaintiff reported that she was very happy and much less anxious [T. 24, 542]; in October 1999, she reported that while she was very sad, her life was getting better all the time [T. 540]; and in March 2000, she reported feeling well and encountering success at every turn [T. 538]. She further reported that she had taken a lead part in a play, and was growing her internet business representing artists. [Id.]. Later that month, she faced a distressing situation when she had to come to the aid of a suicidal friend; she stated that the incident gave her a new appreciation for her body and her strength [T. 537]. In June 2000, she reported that she was earning good money with her business, that she was feeling "quite good," and that she was not aware of feeling anxious [T. 24, 536]. In October 2000, she reported

7

sleeping well and working a couple of hours per day, even though she was sad all the time [T. 533]. In January 2001, Plaintiff stated that she had started a new acting class and was planning a celebration for her fiftieth birthday. [T. 24, 528]. In February 2001, she reported that her celebration went extremely well, with "surprisingly little stress." [T. 527].

While Plaintiff experienced a temporary upswing in anxiety in early 2001 [T. 24, 520-25], by June 2001, she was feeling much better, and was back to work brokering art on the internet and going to acting class. [T. 24, 519]. On November 15, 2001, she reported feeling back to normal, working, going out, and attending acting class and auditions. [T. 24, 513]. On April 16, 2002, Plaintiff stated that she was performing four to five times a week, and was still working on e-bay [T. 504]. She reported an increase in symptoms with the demise of her marriage, and had thoughts of suicide but without any intent or plan; she declined an offer for hospitalization. [T. 24, 492-97].

In addition to Dr. Feingold's treatment notes, two state agency consulting psychological experts reviewed the record and opined that the evidence was insufficient to establish that the claimant suffered from severe impairments prior to the date last insured. [T. 289, 291].

While Plaintiff argues that the ALJ failed to consider "the vocational aspects of [her] severe mental health impairments," [Doc. 14 at 10], Plaintiff

8

has not identified any limitations beyond those ultimately found by the ALJ for the period she retained insured status. Based on the evidence described above, the Court concludes that there is substantial evidence to support the ALJ's finding that Plaintiff suffered from mental health impairments prior to the date last insured, but that she retained the ability to perform work activities during the relevant period.

Plaintiff relies heavily upon her history of treatment with Dr. Charles Reagan to show that she suffered disabling mental impairments during the relevant period. [Doc. 14 at 5]. Plaintiff began treatment with Dr. Reagan on April 15, 2003, two weeks after her date last insured. At that time, she reported her long history of mental and emotional problems, and a sad mood of one month duration. [T. 196]. As of that date, she had no history of suicide attempts, and Dr. Reagan assigned her a global assessment of functioning (GAF) score of 55 [T. 198], which is indicative of only moderate symptoms at the time of evaluation. See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. text revision 2000). Accordingly, Dr. Reagan's treatment records do not provide substantial evidence of disabling impairments during the relevant period.

While Plaintiff offered other medical records and opinion evidence to establish her impairments, as the ALJ noted, most of this evidence "relat[es]

9

almost exclusively to the period after her date last insured." [T. 24]. Nevertheless, the ALJ examined this evidence to determine whether such evidence shed any light on the severity of Plaintiff's impairments during the relevant period. [Id.]. For example, the ALJ noted Dr. Berg's opinions regarding Plaintiff's mood instability and inability to maintain substantial gainful employment [T. 24], but correctly found that Dr. Berg did not treat the claimant during the relevant period, and did not make her opinions regarding the claimant's functioning expressly retroactive [T. 24, 448, 559-64]. Similarly, Plaintiff's social worker, Thea Schulze, did not begin treating her until October 2005, and the opinion she provided was not expressly retroactive. [T. 425-26]. As such, this evidence does not provide substantial evidence of disability during the relevant period.

While Plaintiff's condition clearly deteriorated during the last few years of her life, such deterioration does not undermine the ALJ's assessment of her condition for the period between April 1998 and March 2003. There is substantial evidence to support the ALJ's assessment of the limited evidence from that period, and therefore, the Commissioner's decision is hereby affirmed.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability from the alleged onset date through the date last insured.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 18] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 13] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 29, 2011

Martin Reidinger
United States District Judge